NICHOLAS S. NASSIF, Esq. 129434
Law Offices of Nicholas S. Nassif
3055 Wilshire Blvd.
Suite No. 900
Los Angeles, CA, 90010
Telephone: (213) 736-1899

Attorney for Plaintiff JACK A. HARRIMAN

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA,

## LOS ANGELES DIVISION

In re: Jack A. Harriman

     Debtor,

_____

Jack A. Harriman,

     Plaintiff,

  v.

Elizabeth Hoekstra, an individual; 11211 La Habra
Properties, Inc., a California corporation; Global
Private Funding, Inc., a California corporation;
GPF Real Estate & Finance Corporation, a
California corporation; Saman Seneviratne also as
Sam Francis Senev, an individual,

     Defendants

_____

|  |
|---|
| CHAPTER 7 BANKRUPTCY |
| Case No. 2:11–bk-33451-PC |
| |
| ADV. No. |
| |
| **COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS NOT KNOWN OR SCHEDULED DURING PRIOR PROCEEDING PURSUANT TO 11 U.S.C. §§ 523(a)(2) and (a)(4)** |

   In this adversary proceeding, Plaintiff Jack A. Harriman ("Plaintiff") requests the Court to issue

an Order that the claims asserted against him in state court by the above Defendants (Elizabeth

Hoekstra, an individual residing in New Jersey, and 11211 La Habra Properties, Inc., her wholly owned California corporation), are discharged and may not be further pursued.  Plaintiff learned of such claims against him made by Defendants only upon being served with Summons and Complaint in Hoekstra v. Global Private Funding, Inc., Los Angeles Superior Court Case No. BC 474129, on or about December 15, 2011, nearly 7 months subsequent to May 26, 2011, the date of Plaintiff's commencement of his no asset Chapter 7 case, 2:11–bk 33451-PC, and inadvertently Plaintiff's schedules were not thereafter amended to schedule such claims prior to entry of Discharge on September 4, 2012.  Plaintiff submits that such claims are dischargeable pursuant to 11 USC § 523(a)(2) and (a)(4) and that, pursuant to In re Beezley (9th Cir. 1993) 994 F.2d 1433, Defendants therefore may not further pursue such already discharged claims.

Additionally, Plaintiff requests the Court also to issue an Order that another claim (that that was recently asserted against him in state court by way of the cross-complaint of Defendants Global Private Funding, Inc., GPF Real Estate & Financing Corp. and Saman Seneviratne served and filed on September 13, 2012 in Hoekstra v. Global Private Funding, Inc., Los Angeles Superior Court Case No. BC 474129, nearly 17 months subsequent to Plaintiff's commencement of his no asset Chapter 7 case and after the entry of his Discharge in that Bankruptcy Case on September 4, 2012) likewise be determined by this Court to have been discharged and that such cross-defendants may not further pursue against Plaintiff such claims that were so discharged on September 4, 2012.

In support of the Order herein requested, Plaintiff hereby alleges as follows:

### JURISDICTION AND VENUE

1.      This is a core proceeding within the meaning of 28 USC § 157(b)(2)(1).  Jurisdiction arises under 28 USC § 1334. The District Court generally refers these matters to the Bankruptcy Court for hearing pursuant to 28 USC § 157(a). This adversary complaint is brought pursuant to 11

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF UN SCHEDULED DEBT
PURSUANT TO 11 U.S.C. §§ 523(a)(2) and (a)(4)**

USC § 523(a)(8) and Bankruptcy Rule 4007(b). Venue is proper in this district pursuant to 28 USC § 1409(a). The Bankruptcy Case was filed in the Central District of California, Los Angeles Division.

## INTERESTED PARTIES

2.    On May 26, 2011, Plaintiff filed the above-referenced voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code (the "Bankruptcy Case").

3.    Samuel S. Leslie was duly appointed as the Chapter 7 trustee in the Bankruptcy Case.

4.    Defendant Elizabeth Hoekstra is a retired individual who maintains her principal residence within the State of New Jersey. Her claims arise out of her investment of funds in California real estate located at Adalanto, California, a place within this District of California.

5.    Defendant 11211 La Habra Properties, Inc. is a California corporation that is wholly owned by Defendant Elizabeth Hoekstra, who caused it to be formed to hold title to, and cause to be managed, the California real estate located at Adalanto, California, which Defendant Elizabeth Hoekstra acquired through the professional real estate brokerage services provided to her by Plaintiff as is more fully alleged below set forth hereafter.

6.    Defendant Global Private Funding, Inc. ("Global Inc.") is a California corporation which was held out to Plaintiff and the public as being a world-wide international company based in Beverly Hills, California. Defendant GPF Real Estate & Financing Corp. ("Grefco") is a California corporation which was held out to Plaintiff and the public as being a subsidiary or otherwise affiliated in same way with Global Inc. Defendant Saman Seneviratne ("Seneviratne") [commonly also known as "Sam Francis Senev"] was held out to Plaintiff and the public as being the "Chairman & CEO" of Global, Inc.

7.    Although the technical relationships were far from clear, Global, Inc., Grefco and Seneviratne collectively were held out both to Plaintiff and to the public as part of (or comprising)

---

3

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF UN SCHEDULED DEBT
PURSUANT TO 11 U.S.C. §§ 523(a)(2) and (a)(4)**

"Global Private Funding" (also referred to as simply "Global" and/or "the Global team") which, although technically ill-defined, included an entity (or group of entities) that purportedly engaged in the "international business" of providing, for compensation, funding for selected, high-end clients who sought such financing for various multi-million dollar projects [including real estate purchase and refinancing projects] most of which (unlike the La Habra acquisition described below), were of a value in excess of $100 million.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

8.    Plaintiff is a duly licensed California Real Estate Broker, California License No. 01204794, and has held such license since January 9, 1996.  Plaintiff maintains his professional offices at 216 W. Foothill Blvd., Monrovia, CA 91016 and does business under the fictitious business name of Jack Harriman and Associates.  For a period of months during 2010 Plaintiff maintained a business relationship with Seneviratne and John Jay ("Jay"), a California lawyer and "Executive Managing Director" and "Legal Department" of "Global Private Funding."  According to Seneviratne and Jay, they were the principals in "Global" which, for its own reasons, was willing, for a fee, to "ally" itself with Plaintiff in his capacity as a licensed California real estate broker of long standing, by permitting Seneviratne to suspend his normal duties as "Chairman & CEO" with respect to Global's purported "$100 million+" transactions in order to bring to Plaintiff, in his capacity as a licensed California real estate broker, those California real estate purchase and/or finance "deals" that were too small for Global to become involved in "corporately," that is, which were of a size less than Global's "normal" $100 million threshold value.  As alleged below, such business relationship between Plaintiff and "Global" terminated acrimoniously in November, 2010, and Plaintiff's affiliation of record with Global, Inc. accordingly was cancelled by the California Department of Real Estate as of November 15, 2010.

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF UN SCHEDULED DEBT
PURSUANT TO 11 U.S.C. §§ 523(a)(2) and (a)(4)**

9.      Seneviratne introduced Defendant Hoekstra ("Hoekstra") to Plaintiff during the above

period of business affiliation between Plaintiff and "Global," explaining that he, Seneviratne, had a

personal relationship with Hoekstra in that (a) Hoekstra's daughter and grandchild lived in Los

Angeles, (b) that her grandchild attended the same private school as did Seneviratne, (c) that the

children were friends and thus that a close personal relationship had arisen between himself and

Hoekstra/ Hoekstra's family, (d) that Hoekstra was a divorced, retired veterinarian residing principally

in New Jersey excepting when visiting her daughter and her family in Los Angeles, (e) that Hoekstra

had confided to him that she possessed well over $1,000,000.00 in assets held in IRA and other

accounts at Fidelity that were earning less than 1% yields, (f) that Seneviratne had interested Hoekstra

in doubling or tripling that annual yield by investing her retirement assets into lucrative California real

estate that would/could throw off an annualized cash flow substantially in excess of what she was

earning at Fidelity, and (g) that Seneviratne had advised Hoekstra that Plaintiff was the broker to use

to accomplish that goal in which he had interested her, because Plaintiff was knowledgeable about,

and specialized in, facilitating purchases, sales and refinancing of California real estate, both com-

mercial and residential, had multiple lending sources, and, additionally, an accomplished property

manager who would be willing to act both as her broker and property manager if she wished.

10.     Hoekstra desired to pursue Seneviratne's recommendations and accordingly requested

Plaintiff to seek out and find California real estate property that could be purchased by her at a

reasonable price that would be likely to generate a significantly better cash flow than her existing

albeit "safe" Fidelity accounts.  However Hoekstra was uncomfortable about tying up her 401k plan

account funds in such potentially illiquid assets, and requested that Plaintiff additionally arrange a

"bridge loan" by means of which to refinance a portion of the acquisition cost of such property, so that

she could return those funds to her 401k plan account at Fidelity within 60 days of withdrawal and

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF UN SCHEDULED DEBT
PURSUANT TO 11 U.S.C. §§ 523(a)(2) and (a)(4)**

thus assure the future availability to her of those funds should she require them while developing the

cash flow potential from the real property she anticipated purchasing.

11.    Plaintiff agreed to assist Hoekstra in locating candidate possible purchases meeting her

requirements and to arrange for the requested refinancing, if available, so that she could return to her

Fidelity 401k plan account those funds she wished to withdraw on a temporary basis only, and which,

she specified, she absolutely insisted be so returned within 60 days of withdrawal.

12.    In or about May, 2010 Plaintiff undertook to so assist Hoekstra as requested.  He

ultimately found two separate properties that Seneviratne recommended to Hoekstra stating that she

would be assured of having a steady income stream through which to enjoy her retirement if she

purchased two income properties both of which were located in Adelanto, California, one (11211 La

Habra Ave, Adelanto, CA ["La Habra"]) for which the asking price was $1.9 million, and the other (a

smaller, 24 unit apartment building on Chapparal Avenue, Adelanto, CA ["Chaparral"]) for which the

asking price was $1.13 million.  Both were multiple apartment buildings that had high vacancy rates but

were located near to the United States Army's National Training Center at Fort Irwin, California,

which, since 1979, has been considered to be one of the top training areas in the United States Army

and thus presented potentially lucrative investment opportunities due to the stable and on-going need

for suitable off-base housing for dependents of enlisted men who regularly are and will be assigned to

Fort Irwin for premier training in the military.  Hoekstra assented to those suggestions and requested

that escrow arrangements be made.

13.    On June 15, 2010 Plaintiff received $60,000.00 from Hoekstra and thereafter deposited the

same to the escrow that was opened for her purchase of La Habra.  Seneviratne requested Hoekstra to

come to Los Angeles to see both properties as soon as possible so that she would not "loose these

opportunities," and Hoekstra responded immediately by email that she would arrive in 2 days, that she

6

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF UN SCHEDULED DEBT**
**PURSUANT TO 11 U.S.C. §§ 523(a)(2) and (a)(4)**

was "excited about seeing the properties!", was "afraid [she] will wake up and find it was all a dream", and that she wished to "Thank you sooo much for making this possible for me!" Hoekstra inspected both properties and found La Habra to be acceptable; on or about August 2, 2010 she entered into the Loan Purchase and Sale Agreement by which Union Bank (the holder of the existing first deed of trust on La Habra), agreed to assign directly to her that first encumbrance upon the property for approximately $300,000.00 less than it face amount (and which assigned note would then be delivered to the seller through escrow for a commensurately reduced sales price for La Habra). Hoekstra thereafter arranged for, and caused to be delivered to escrow, the funding necessary for closing escrow on the La Habra acquisition. The La Habra escrow closed on August 11, 2010 and Hoekstra received title to it, which she subsequently transferred to Defendant La Habra. However, Hoekstra ultimately elected not to purchase Chaparral and accordingly cancellation instructions for its escrow were executed by her on or about September 9, 2010.

14.    Prior to close of the La Habra escrow, Plaintiff negotiated with the seller, through seller's real estate agent, to accept from the seller a total commission of $269,975.00 as his agreed-upon lawful compensation for his licensed broker's services in securing a ready, willing and able purchaser for the La Habra property. On August 11, 2010, the seller paid to Plaintiff that agreed-upon brokerage commission, through escrow, upon consummation of Hoekstra's acquisition of that property. At no time did Hoekstra and Plaintiff agree that Hoekstra would be responsible to Plaintiff for any commission whatsoever for his professional services in identifying, analyzing, selecting, and evaluating potential properties for acquisition for Hoekstra, handling all steps preliminary to con-summating escrow upon such properties as she might select, negotiating the lender's assignment of the La Habra first encumbrance and its discounted price, and/or securing the refinancing she requested, and at no time did Hoekstra incur any liability whatsoever to Plaintiff to compensate him in any way

7

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF UNSCHEDULED DEBT
PURSUANT TO 11 U.S.C. §§ 523(a)(2) and (a)(4)**

for his rendering such services for her benefit and at her specific request.

15.    Under California law, absent any enforceable contract to the contrary, upon the sale of real property, it is the seller of real property, not the buyer, who is required to pay the commission that becomes due to a licensed real estate broker representing the purchaser upon the close of such sale. Conversely, the purchaser of such property owes the broker representing him no commission whatsoever **unless** that purchaser interferes with his broker's entitlement to so earn payment of the broker's commission **from the seller**, by either refusing to consummate the transaction or otherwise defeating its occurrence. Hoekstra did not renege on her undertaking to purchase the La Habra property, and Plaintiff accordingly fully earned the broker's commission of $269,975.00 that the seller of La Habra paid to him through escrow on August 11, 2010 as Plaintiff's agreed-upon full compensation for his professional services rendered in bringing about such sale. For those reasons, Hoekstra never owned any right, title, or interest in Plaintiff's fully earned commission or otherwise enjoyed any right whatsoever to all or any portion of it under state law.

16.    After close of the La Habra escrow, Plaintiff secured a 24 month refinancing loan on it for Hoekstra as requested, from which she received net funds of $560,132.75 for redeposit to her Fidelity account and Hoekstra did so (together with the further sum of $39,867.25 that was provided to her to assure her ability to redeposit in her Fidelity §491k account the entirety of he $600,000.00 she had temporarily withdrawn to consummate her purchase of La Habra). Thereafter Plaintiff's staff provided to Hoekstra property management services for the La Habra property, and on October 20, 2010 delivered to her true and accurate statements of operating income and cash flow that arose out of Plaintiff's property management services rendered on her behalf subsequent to close of escrow.

17.    Just weeks after issuance of those property operations reports by Plaintiff, however,

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF UN SCHEDULED DEBT
PURSUANT TO 11 U.S.C. §§ 523(a)(2) and (a)(4)**

serious controversies arose between Plaintiff, on the one hand, and "Global's" principals, on the other, such that all previously existing relationships became permanently severed, leaving uncertain who thereafter would manage La Habra on Hoekstra's behalf. Among other things, "Global's" principals appropriated for their own use and benefit, and thereafter retained for their sole use and benefit, the major portion of the $269,975.00 commission Plaintiff was paid by the seller and earned upon the close of the La Habra escrow, and thereafter fomented expensive (albeit unsuccessful) litigation against Plaintiff. Faced with such wholly unexpected avarice, Plaintiff contacted Hoekstra as to her then unresolved issue, as between Plaintiff and "Global," whom would Hoekstra rely upon to manage her just-acquired La Habra property? Although Plaintiff specifically offered to manage that property for her on a no fee basis to assure the continued value of her investment, Hoekstra stated that, because of her daughter's relationship with Seneviratne, she could not and would not accept that offer and instead would continue her relationship with Global and sever all dealings thereafter with Plaintiff, which she did.

18.    As a result of Hoekstra's determination not to permit Plaintiff to further manage La Habra on her behalf, Plaintiff understood that Global thereafter would provide whatever services Hoekstra might thereafter require, that he should have no further dealings or communications whatsoever with her, and accepted her decision. For that reason he had no further dealings or communications with Hoekstra and, following cancellation of his formal affiliation with Grefco, resumed providing real estate sales, purchase, and financing services to clients other than Hoekstra under the name and style of Jack Harriman and Associates.

19.    On May 26, 2011 Plaintiff filed his voluntary petition under Chapter 7, Bankruptcy Case No. 2:11–bk 33451-PC. Plaintiff did so without any knowledge that Defendants Hoekstra and La Habra believed that he was indebted to them in any amount whatsoever and accordingly did not

9

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF UN SCHEDULED DEBT
PURSUANT TO 11 U.S.C. §§ 523(a)(2) and (a)(4)**

list either as a scheduled creditor.  Plaintiff had no reason to notify either that he had commenced

such proceeding and did not do so.

20.    On November 28, 2011, nearly 7 months later, Defendants Hoekstra and La Habra

filed their Complaint in BC 474129, asserting claims of breach of contract, breach of fiduciary duty,

fraud/constructive trust, constructive fraud, unjust enrichment, accounting, and conversion against

Global Private Funding, Inc., Grefco, and Seneviratne (albeit not Jay), premised upon the theory that

Hoekstra's purchase of La Habra was induced by "fraud" and that "Defendants" were guilty of

misconduct regarding property management services provided by them flawed by, e.g., failing to

find and secure tenants for La Habra; failing to collect rents and maintain the property; mismanaging

security deposits; failing to service the mortgage, utility costs, vendor costs, and necessary taxes;

failing to provide Hoekstra and La Habra with an accurate accounting as to revenues, income, profits

and losses; manipulating invoices and payments to keep a percentage of the amounts claimed to have

been paid to vendors; and taking excessive fees for all such property management services.  In

asserting such claims, Hoekstra and La Habra indiscriminately lumped in Plaintiff (and his wholly

owned corporation that had had no participation whatsoever in the La Habra acquisition transaction)

among the "Defendants" alleged to have so damaged Hoekstra.

21.    Plaintiff learned for the first time that Hoekstra had asserted any claims against

anyone arising out of the La Habra acquisition transaction, and that she believed that he was also

blameworthy for whatever claims she had against Global, Global and Seneviratne (but apparently

not Jay), only on December 14, 2011 when he was personally served with summons and complaint

in such action.  Plaintiff failed to recognize that those claims were within the purview of his own

pending Chapter 7 bankruptcy case and schedulable, and inadvertently failed to apprise his

bankruptcy counsel of their existence and instead engaged non-bankruptcy counsel to respond to

10

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF UN SCHEDULED DEBT
PURSUANT TO 11 U.S.C. §§ 523(a)(2) and (a)(4)**

such claims against him in state court.  As a result, bankruptcy counsel failed to amend Plaintiff's

schedule in his no asset case, no notice of pendency of such case was served upon Defendants

Hoekstra and La Habra, and such claims were neither listed nor scheduled under 11 U.S.C. § 521(1)

with the name of the creditor to whom such debt allegedly was owed in time to permit timely filing

of a proof of claim and timely request for a determination of dischargeability of such debts under 11

U.S.C. § 523(a)(2) or 523(a)(4) and, Plaintiff is informed and believes, and thereupon alleges,

Defendants Hoekstra and La Habra lacked notice or actual knowledge of the case in time for such

timely filing and request determination of dischargeability.

22.    On September 4, 2012 Plaintiff received his Discharge in the above Chapter 7 case.

A true and correct copy of such Discharge is attached as Exhibit A and incorporated herein by this

reference.  On October 26, 2012 a true and correct copies of Exhibit A was served upon (1)

Defendants Hoekstra and La Habra by service upon their state court counsel of record, Marc Karlin,

Esq. of Karlin & Karlin, 3701 Wilshire Blvd., No. 1035, Los Angeles, CA 90010-2804, and (2)

Defendants Global, Grefco, and Seneviratne by service upon their state court counsel of record,

Abraham A. Sanchez Siqueiros, Esq., 510 South Spring Street, Suite 911, Los Angeles, CA 90013.

## FIRST CAUSE OF ACTION

23.    Plaintiff adopts, realleges, and by this reference incorporates paragraphs 1 through 22,

inclusive, as though here fully set forth.

24.    By its terms, 11 U.S.C. § 523(a)(2) provides that Plaintiff's Discharge issued on

September 4, 2012 "does not discharge an individual debtor from any debt –(2) for money, property,

services, or an extension, renewal, or refinancing of credit, to the extent obtained by -(A) false

pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF UN SCHEDULED DEBT
PURSUANT TO 11 U.S.C. §§ 523(a)(2) and (a)(4)**

insider's financial condition . . ." In the Ninth Circuit, the above fraud exception to dischargeability prevents the discharge of a debt claimed by the creditor to be founded upon actual fraud only where the creditor establishes that, among other things, "the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made." In re Sabban (9th Cir., 2010) 600 F.3d 1219.

25.     Plaintiff managed the La Habra property on Hoekstra's behalf for slightly less than two months following her acquisition of it on August 11, 2010 and rendered true and correct statements of operating income and cash flow that arose out of his property management services so rendered to her behalf subsequent to close of escrow as alleged above.  As also alleged, Hoekstra thereafter opted to supplant Plaintiff by employing Global's then-unaffiliated agents to manage such real property; presumably they continued to do so until on or about November 28, 2011, when she sued Global, Grefco and Seneviratne (but not Jay) for fraud and various forms of property manage-ment misconduct: failing to find and secure tenants for La Habra; failing to collect rents and maintain the property; mismanaging security deposits; failing to service the mortgage, utility costs, vendor costs, and necessary taxes; failing to provide Hoekstra and La Habra with an accurate accounting as to revenues, income, profits and losses; manipulating invoices and payments to keep a percentage of the amounts claimed to have been paid to vendors; and taking excessive fees for all such property management services.  None of those claimed acts of misfeasance were committed by Plaintiff prior to Hoekstra's substitution of Global as property manager in place of Plaintiff, and could have been, and were not, committed by Plaintiff thereafter.

26.     Defendants Hoekstra's and La Habra's state court pleading is uncertain as to whether they contend that Plaintiff's receipt and retention of all or some portion of the commission he earned as compensation for his rendition of broker's services to Hoekstra culminating in the acquisition and

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF UN SCHEDULED DEBT**
**PURSUANT TO 11 U.S.C. §§ 523(a)(2) and (a)(4)**

refinancing of the La Habra property allegedly deprived her by actual fraud of any property or money to which she claims entitlement. Any such claim, even if Defendants intended to make it, would not constitute the alleged loss and damage a creditor is required to establish to preclude discharge of the debt under § 523(a)(2): As alleged above, Hoekstra paid Plaintiff no commission whatsoever to obtain title to the La Habra property and, as a matter of state law, Hoekstra possesses no claim to any portion of the commission that the seller agreed to pay, and did so pay, to Plaintiff upon close of escrow – a commission that at all times Plaintiff, and only Plaintiff, a licensed real estate broker, had earned and was entitled to receive as his own property.

27.    Plaintiff received no property or monetary benefit from completion of the La Habra acquisition transaction save and except for the relatively small portion of the $269,975.00 commission paid to him by the seller that Global's principals did not misappropriate and wrongfully retain for their own at Plaintiff's expense.

28.    Accordingly, neither Defendant in fact "sustained [any] loss and damage as the proximate result of [any claimed] misrepresentations [they allege Plaintiff] made [in regard to such acquisition of the La Habra property or its subsequent alleged mismanagement]." For that reason, § 523(a)(2) did not bar Defendants' claims from the discharge effected by the foregoing Discharge Plaintiff received on September 4, 2012, and it and such claimed debt may not be further prosecuted without violation of the Court's Discharge Injunction.

## SECOND CAUSE OF ACTION

29.    Plaintiff adopts, realleges, and by this reference incorporates paragraphs 1 through 22, and 24 through 28, inclusive, as though here fully set forth.

30.    By its terms, 11 U.S.C. § 523(a)(4) provides that Plaintiff's Discharge issued on

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF UN SCHEDULED DEBT PURSUANT TO 11 U.S.C. §§ 523(a)(2) and (a)(4)**

September 4, 2012 "does not discharge an individual debtor from any debt –(4) for fraud or defalcation while acting in a fiduciary capacity . . ." For purposes of § 523(a)(4), the Ninth Circuit has adopted a narrow definition of "fiduciary:" To fall within the dischargeability preclusion scope of § 523(a) (4), the fiduciary relationship must be one arising from an express or technical trust that existed before, and without reference to, the wrongdoing that caused the debt. <u>Cal-Micro, Inc. v. Cantrell (In re Cantrell)</u> (9th Cir.2003) 329 F.3d 1119, 1125; <u>Lewis v. Short</u> (<u>In re Short</u>) (9th Cir.1987) 818 F.2d 693, 695.  Thus, although the scope of the term "fiduciary capacity" itself is a question of federal law, the Ninth Circuit looks to state law to determine whether the requisite trust relationship exists to trigger non dischargeability, and no disqualifying trust relationship can be found to be established under § 523(a)(4) unless the applicable state law clearly defines fiduciary duties and identifies specific trust property that allegedly was made the subject of a defalcation giving rise to the non discharged debt. <u>Runnion v. Pedrazzini</u> (<u>In re Pedrazzini</u>) (9th Cir. 1981) 644 F.2d 756, 759; <u>In re Cantrell</u>, at 1125.  Thus, in the Ninth Circuit, the fiduciary defalcation exception to dischargeability prevents the discharge of a debt claimed by the creditor to be founded upon claimed fiduciary defalcation only where, among other necessary requirements, the creditor establishes both that (a) the "fiduciary capacity" was one arising from a preexisting express or technical form of trust recognized by the courts as contemplated by § 523(a)(4) which exists prior to the alleged fiduciary wrongdoing, **and** (b) there in fact exists an actual res for such trust some or all of which has been misappropriated by the debtor.  Id.

31.     The prohibition upon dischargeability found in § 523(a)(4) did not prevent the discharging of Plaintiff's alleged debts to Defendants Hoekstra and La Habra for 2 separate and independently dispositive reasons: First, although clearly existing by statute under California law, the fiduciary duty owing from broker to client is not the type of express or technical trust which is a

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF UN SCHEDULED DEBT
PURSUANT TO 11 U.S.C. §§ 523(a)(2) and (a)(4)**

sine qua non for applicability of the fiduciary defalcation bar set forth in § 523(a)(4). <u>Ragsdale v. Haller</u> (9th Cir.1986) 780 F.2d 794, 796; <u>Woosley v. Edwards</u> (In re Woosley) (9th Cir. BAP 1990) 117 B.R. 524, 529; <u>In re Cantrell</u>, at 1125.  Second, the existence of a true res -- trust property – is equally essential (<u>In re Pedrazzini</u>) and, as alleged above, the only property Plaintiff received was the commission he earned, and the seller knowingly and willingly to him through escrow as the agreed compensation for his bringing about the sale of the La Habra property at the price the seller agreed to, and did, accept.  Thus the sole property received by Plaintiff by and through such transaction was property that was never owned by Hoekstra and to which she had, and now has, no claim whatsoever under applicable state law.

32.     Accordingly, neither Defendant in fact had any claimed debt resulting from a fiduciary defalcation made non dischargeable by § 523(a)(4).

33.     Section 523(a)(4) not being applicable, the claims of Defendants Hoekstra and La Habra were discharged on September 4, 2012 when the Court issued its Discharge to Plaintiff on September 4, 2012, and those alleged debts may not be further prosecuted without violation of the Court's Discharge Injunction.

### THIRD CAUSE OF ACTION

34.     Plaintiff adopts, realleges, and by this reference incorporates paragraphs 1 through 22, and 23 through 33, inclusive, as though here fully set forth.

35.     On or about September 13, 2012, in <u>Hoekstra v. Global Private Funding, Inc.,</u> Los Angeles Superior Court Case No. BC 474129, Defendants and Cross-Defendants therein Global Inc., Grefco, and Seneviratne ("Cross-Defendants") filed a Cross-Complaint (the "Cross-Complaint" or "X/C") in which they asserted against Plaintiff a claim of fraud arising out of the above alleged short term business relationship that existed in 2010 between Plaintiff herein and such "Global Team"

15

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF UN SCHEDULED DEBT
PURSUANT TO 11 U.S.C. §§ 523(a)(2) and (a)(4)**

members (and out of which the foregoing claims of Defendants Hoekstra and La Habra arose). Such fraud claim was served by mail upon Plaintiff's state court counsel's office on September 13, 2012.

36.    The fraud claim so purportedly asserted (the "Global Claim") alleges that, in June, 2010, Grefco purportedly entered into a written trademark licensing agreement with Plaintiff and his corporation that was intended to confer a non-exclusive license upon Plaintiff for use of "Global's" trademarks in connection when rendering real estate and financial services to clients referred to Plaintiff by Global (of which Defendant Hoekstra subsequently became one); that in late August, 2010, "Global" "discovered" certain purported financial irregularities in the course of that relation-ship, "suspended" Plaintiff from further dealings "with the financial aspects of such relationship;" that in October, 2010 Plaintiff "removed" $10,000 that had been deposited into a Grefco bank account and attempted to wire transfer additional funds to himself; and that, in some unexplained way, Plaintiff and others additionally managed to "misappropriat[e] corporate funds" from Grefco.

37.    By its terms, the Global Claim is one that arose prior to both (a) Plaintiff's filing of his Chapter 7 case on May 26, 2011 and (b) September 4, 2012, the date when the Court issued its Discharge of Plaintiff. Accordingly, unless excepted from the effect of that Discharge, the Global Claim has been fully discharged and may not be further prosecuted without violation of the Court's Discharge Injunction.

38.    Any claim that Cross-Defendants might make that the Global Claim was excepted from Plaintiff's Discharged issued September 4, 2012 by 11 U.S.C. § 523(a)(2) fails as a matter of law for the same reasons that the claims of Defendants Hoekstra and La Habra must fail: None of Cross-Defendants sustained the alleged loss and damage they claim as a proximate result of the very misrepresentations they claim were made to them, an absolute sine qua non for non dischargeability of a debt under § 523(a)(2) in the Ninth Circuit. In re Sabban.

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF UN SCHEDULED DEBT
PURSUANT TO 11 U.S.C. §§ 523(a)(2) and (a)(4)**

39.     Cross-Defendants' Cross-Complaint is deficient as a matter of pleading in that it fails to allege that any of the funds they claim were "improperly removed" or "misappropriated" in fact were funds that constituted any property owned by Grefco.  It so fails to allege that crucial element without which no essential sustaining of the alleged loss and damage claimed can be proved, because they cannot truthfully so plead any such ownership in Grefco (or in any other "Global Member"), for the truth is that all funds so "removed" by Plaintiff in point of fact at all times were the property of Plaintiff, not Grefco, regardless of how Grefco euchred Plaintiff into allowing his own funds to be deposited into a Grefco bank account upon which he had signing authority.  In truth and in fact, all such funds so "removed" are directly traceable to, and constituted portions of, the very commission of $269,975.00 that the seller of the La Habra property agreed to, and did, pay to Plaintiff through escrow as his agreed seller-paid commission for producing a buyer of such property that became earned, payable, and paid upon close of escrow.  Plaintiff's "removing" to his own possession and control of funds that at all times were his own is not, and cannot be, the requisite sustaining of the alleged loss and damage which is a sine qua non to non dischargeability under § 523(a)(2) in this Circuit.  For that reason, § 523(a)(2) did not exempt the Global Claim from Plaintiff's Discharge.

39.     Any alternative claim that Cross-Defendants might make that the Global Claim was excepted from Plaintiff's Discharged issued September 4, 2012 by 11 U.S.C. § 523(a)(4) likewise must fail as a matter of law, for essentially the same reasons as must those of Defendants Hoekstra and La Habra: Neither the requisite "fiduciary relationship" nor the requisite actual trust res of the mandatory express or technical trust existed, and thus § 523(a)(4) is equally inapplicable to bar Plaintiff's discharge from such claimed debt as of September 4, 2012.

40.     As alleged above, the fiduciary relationship essential to applicability of § 523(a)(4) must be one arising from an express or technical trust that existed before, and without reference to,

17

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF UN SCHEDULED DEBT
PURSUANT TO 11 U.S.C. §§ 523(a)(2) and (a)(4)**

the wrongdoing that caused the debt. <u>In re Cantrell</u>. Constructive trusts such as Cross-Defendants alleged are insufficient to supply the required fiduciary duty for application of the fiduciary defalcation exception. <u>In re Pedrazzini</u>. At best Cross-Defendants can claim Plaintiff was under a fiduciary duty arising from an agency status from his officership status with Grefco, a party **not** the owner of the "removed funds;" that relationship fails to satisfy the "fiduciary relationship" requirement as a matter of California law. <u>In re Cantrell</u>. Additionally, because Cross-Defendants have not alleged, and cannot truthfully allege, that any of the funds Plaintiff is claimed to have "removed" or "misappropriated" were actually owned by Grefco, and because they in fact were portions of Plaintiff's fully earned commission willingly paid to him by the seller in which Grefco never acquired any right, title or interest whatsoever, no trust res ever existed. As alleged above, absent a true res under a sufficient express or technical trust, the fiduciary defalcation prohibition upon dischargeability is inapplicable and the debt is discharged. <u>In re Pedrazzini</u>. That is precisely the case here.

41.    Neither § 523(a)(2) nor § 523(a)(4) being applicable, the Global Claim of Cross-Defendants were discharged on September 4, 2012 when the Court issued its Discharge to Plaintiff on September 4, 2012, and it may not be further prosecuted without violation of the Court's Discharge Injunction.

WHEREFORE, Plaintiff requests this Court to enter an Order declaring Plaintiff's claimed debt(s) to Defendants Hoekstra and La Habra, and the Global Claim of Cross-Defendants, to be dischargeable in the Bankruptcy Case, to thus have been so discharged on September 4, 2012, and that such creditors be deemed to be in violation of the Discharge Injunction if they, or any of them, seek further to prosecute such already discharged claimed debts.

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF UN SCHEDULED DEBT
PURSUANT TO 11 U.S.C. §§ 523(a)(2) and (a)(4)**

Dated: October 29, 2012

LAW OFFICES OF NICHOLAS S. NASSIF

By: Nicholas S. Nassif, Esq.,
Attorneys for Plaintiff JACK A. HARRIMAN

19

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF UN SCHEDULED DEBT
PURSUANT TO 11 U.S.C. §§ 523(a)(2) and (a)(4)**

B18 (Official Form 18)(12/11)

# United States Bankruptcy Court
## Central District Of California

255 East Temple Street, Los Angeles, CA 90012

## DISCHARGE OF DEBTOR

**DEBTOR INFORMATION:**                                    BANKRUPTCY NO. 2:11-bk-33451-PC
JACK ALTON HARRIMAN SR.
dba JACK HARRIMAN & ASSOCIATES                            CHAPTER 7
Last four digits of Social-Security or Individual Taxpayer-Identification (ITIN) No(s)., (if any): xxx-xx-9808
Employer Tax-Identification (EIN) No(s).(if any): N/A
Debtor Discharge Date: 9/4/12

**JOINT DEBTOR INFORMATION:**
BETTY S. HARRIMAN

Last four digits of Social-Security or Individual Taxpayer-Identification (ITIN) No(s)., (if any): xxx-xx-1042
Employer Tax-Identification (EIN) No(s).(if any): N/A
Joint Debtor Discharge Date: 9/4/12

Address:
740 E. FOOTHILL BLVD.
MONROVIA, CA 91016

It appearing that the debtor is entitled to a discharge, IT IS ORDERED: The debtor is granted a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code). SEE THE BACK OF THIS ORDER FOR EXCEPTIONS AND OTHER IMPORTANT INFORMATION.

BY THE COURT,

Dated: September 4, 2012

Kathleen J. Campbell
Clerk of the Court

* Set forth all names, including trade names, used by the debtor(s) within the last 8 years. For joint debtors, set forth the last four digits of both social-security numbers or individual taxpayer-identification numbers.

(Form b18-DIS Rev. 12/2011) VAN-30                            47 / MS

**EXHIBIT "**  **"**

B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (For Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Jack A Harriman | Elizabeth Hoekstra, an individual; 11211 La Habra Properties, Inc., a California corporation; Global Private Funding, Inc., a California corporation; GPF Real Estate & Finance Corporation, a California corporation; Saman Seneviratne also as Sam Francis Senev, an individual, |

| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (If Known) |
|---|---|
| Nicholas S. Nassif, State Bar No.: 129434<br>3055 Wilshire Blvd., Suite 900<br>Los Angeles, CA 90010<br>213 736 1899; Fax: 231-736-5656<br>nsnassif@pacbell.net | Marc A. Karlin, Esq.<br>KARLIN & KARLIN<br>3701 Wilshire Blvd., Suite 1035<br>Los Angeles, CA 90010<br>-Attorneys for Elizabeth Hoekstra, an individual; 11211<br>La Habra Properties, Inc., a California corporation;<br><br>Abraham A. Sanchez Siqueiros, Esq.<br>Sanchez Siqueiros Law<br>510 S. Spring Street, # 911<br>Los Angeles, CA 90013<br>-Attorneys for Global Private Funding, Inc., a California corporation; GPF Real Estate & Finance Corporation, a California corporation; Saman Seneviratne also as Sam Francis Senev, an individual, |

| PARTY (Check One Box Only) | PARTY (Check One Box Only) |
|---|---|
| ☒ Debtor  ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☐ Other<br>☐ Trustee | ☐ Debtor  ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor  ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUES INVOLVED)
DISCHARGEABILITY OF DEBTS NOT KNOWN OR SCHEDULED DURING PRIOR PROCEEDING PURSUANT TO 11 U.S.C. §§ 523(a)(2) and (a)(4)

| NATURE OF SUIT |
|---|
| (Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.) |

**FRBP 7001(1) - Recovery of Money/Property**
[ ] 11-Recovery of money/property -§542 turnover of property
[ ] 12-Recovery of money/property -§547 preference
[ ] 13-Recovery of money/property -§548 fraudulent transfer
[ ] 14-Recovery of money/property - other

**FRBP 7001(2) - Validity, Priority or Extent of Lien**
[ ] 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) - Approval of Sale of Property**
[ ] 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) - Objection/Revocation of Discharge**
[ ] 41-Objection / revocation of discharge -§727(c),(d),(e)

**FRBP 7001(5) - Revocation of Confirmation**
[ ] 51-Revocation of confirmation

**FRBP 7001(6) - Dischargeability**
[ ] 66-Dischargeability -§523(a)(1),(14),(14A) priority tax claims

**FRBP 7001(6) - Dischargeability (continued)**
[ ] 61-Dischargeability - §523(a)(5), domestic support
[ ] 68-Dischargeability - §523(a)(6), willful and malicious injury
[ ] 63-Dischargeability - §523(a)(8), student loan
[ ] 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
[ ] 65-Dischargeability - other

**FRBP 7001(7) - Injunctive Relief**
[ ] 71-Injunctive relief - imposition of stay
[ ] 72-Injunctive relief - other

**FRBP 7001(8) Subordination of Claim or Interest**
[ ] 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
[ ] 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
[ ] 01-Determination of removed claim or cause

**B104 (FORM 104) (08/07), Page 2**

| | |
|---|---|
| [X]  62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud | **Other** [ ]  SS-SIPA Case - 15 U.S.C. §§78aaa *et.seq.* |
| [X]  67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny | [ ]  02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case) |
| (continued next column) | |

| | |
|---|---|
| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
| ☐ Check if a jury trial is demanded in complaint | Demand $  No demand |
| Other Relief Sought | |

Software Copyright (c) 1996-2012 CCH INCORPORATED - www.bestcase.com                                    Best Case Bankruptcy

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Jack A Harriman | | BANKRUPTCY CASE NO.<br>**2:11-bk-33451-PC** |
| DISTRICT IN WHICH CASE IS PENDING<br>**Central District of California** | DIVISION OFFICE<br>**Los Angeles** | NAME OF JUDGE<br>**Honorable Barry Russell** |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | |
|---|---|
| *Nicholas S. Nassif* (signature)<br>Nicholas S. Nassif 129434 | |
| DATE **10-29-12** | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>**Nicholas S. Nassif 129434** |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| **Nicholas S. Nassif, State Bar No.: 129434**<br>**3055 Wilshire Blvd., Suite 900**<br>**Los Angeles, CA 90010**<br>**213 736 1899; Fax: 231-736-5656**<br>**nsnassif@pacbell.net**<br><br><br><br>*Attorney for Plaintiff* **Jack A Harriman** | |

**UNITED STATES BANKRUPTCY COURT**
**Central District of California**

| In re:<br><br>    **Jack A Harriman**<br><br><br><br><br>                                   Debtor(s). | CASE NO: **2:11-bk-33451-PC**<br><br>CHAPTER: **7**<br><br>ADVERSARY NUMBER: |
|---|---|
|     **Jack A Harriman**<br><br>                                   Plaintiff(s)<br><br>                   Versus<br><br>**Elizabeth Hoekstra, an individual; 11211 La Habra Properties, Inc., a California corporation; Global Private Funding, Inc., a California corporation; GPF Real Estate & Finance Corporation, a California corporation; Saman Seneviratne also as Sam Francis Senev, an individual,**<br><br><br>                                   Defendant(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** |

TO THE DEFENDANT: A Complaint has been filed by the Plaintiff against you. If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint. You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page. The deadline to file and serve a written response is _____. If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| Hearing Date:<br>Time:<br>Courtroom: | **Place:**<br>☒ 255 East Temple Street, Los Angeles, CA 90012<br>☐ 3420 Twelfth Street, Riverside, CA 92501<br>☐ 411 West Fourth Street, Santa Ana, CA 92701<br>☐ 1415 State Street, Santa Barbara, CA 93101<br>☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367 |
|---|---|

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                    Page 1                              **F 7004-1.SUMMONS.ADV.PROC**

**You must comply with LBR 7016-1, which requires you to file a joint status report and to appear at a status conference.** All parties must read and comply with the rule, even if you are representing yourself. You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference. A court-approved joint status report form is available on the court's website (LBR form F 7016-1.1) with an attachment for additional parties if necessary (LBR form F 7016-1.1a). If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference. **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

KATHLEEN J. CAMPBELL
CLERK OF COURT

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding:

By: _____
Deputy Clerk

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                    Page 2                    F 7004-1.SUMMONS.ADV.PROC